IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| DR. RUSSELL KISER, D.D.S., M.S., | : | |
| --- | --- | --- |
| | : | Case No. 2:12-cv-574 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| LILI REITZ, *et al.*, | : | Magistrate Judge Deavers |
| | : | |
| Defendants. | : | |

## **OPINION & ORDER**

This matter is before the Court on Defendants' Motion to Dismiss. (Doc. 36.) For the reasons stated below, the Court **GRANTS** Defendants' motion. This action is **DISMISSED** in its entirety.

### I.    BACKGROUND

Plaintiff, Russell Kiser, D.D.S., M.S., ("Dr. Kiser") is a licensed dentist practicing in the state of Ohio. He owns a dental practice at 1245 South Trimble Road, Mansfield, Ohio 44907. Defendants are members of the Ohio State Dental Board (the "Board"), sued in their official capacities. The Board is a state agency, established by Ohio Revised Code Chapter 4715.01, *et seq.*, and the regulations in the Ohio Administrative Code Chapter 4715, *et seq.* Members of the Board are empowered by statute to license and regulate dental professionals in the State of Ohio, as well as enforce the provisions of O.R.C. § 4715.01, *et seq.*, and O.A.C. § 4715, *et seq.*

Dr. Kiser challenges sections of the Board's administrative scheme regulating dentist advertising and practice. Under the scheme at the time Dr. Kiser filed his complaint, a dentist seeking to advertise as a "specialist" had to complete certain post-doctoral education in a specialty recognized by the American Dental Association ("ADA") and limit his practice exclusively to the indicated specialty. O.A.C. § 4715-5-04(B)(2). If a general dentist were to

advertise expertise in a specialty, or if a specialist were to advertise general dental services, he could have his dental license suspended, placed on probationary status, or revoked by the Board. *Id.* 4715-5-04(B)(2), (C); 4715-13-05(E).

According to Plaintiff's Complaint, Dr. Kiser is a specialist in the area of endodontics (root canal work), but he also performs general dentistry. On August 17, 2009, Dr. Kiser received a warning letter from the Board for an alleged violation of O.A.C. § 4715-5-04(B)(2). The Board issued the warning to Dr. Kiser for practicing "outside the scope" of his declared specialty—endodontics. Dr. Kiser alleges that the warning and threat of formal disciplinary action was intended to have a chilling effect on his commercial speech and induce him to forego lawful advertising. In May 2012, nearly three years after the Board issued the warning, Dr. Kiser requested that the Board review and approve proposed signage for his office that would include the terms "endodontist" and "general dentist" or "general dentistry." The Board neither rejected nor approved the signage, but responded with a copy of the relevant regulations and a letter advising Dr. Kiser to consult with legal counsel. With its response, the Board also included a copy of the 2009 warning to Dr. Kiser. The Board did not commence any formal proceedings or disciplinary action against Dr. Kiser, nor has the Board initiated any such discipline to date.

Dr. Kiser filed his Complaint on June 28, 2012 for constitutional violations of: (1) his First Amendment right to commercial speech; (2) substantive due process; (3) procedural due process; and (4) equal protection. He seeks a judgment declaring O.A.C. §§ 4715-5-04 and 4715-13-05 to be unconstitutional, and injunctive relief prohibiting Defendants from enforcing them.

In August 2013, the Court granted Defendants' Motion to Dismiss for lack of ripeness. (Doc. 17.) Dr. Kiser appealed, and in August 2014 the Sixth Circuit overturned that decision and

remanded the case back to this Court for adjudication. (Doc. 22.) This Court then granted Defendants' motion to dismiss all counts. (Doc. 27.) Following a second appeal, the Sixth Circuit affirmed the Court's dismissal of Dr. Kiser's procedural due process claim, but remanded Dr. Kiser's First Amendment and Equal Protection claims, as well as his substantive due process claim to the extent it is coextensive with his First Amendment claim. (Doc. 30.)

Following the Sixth Circuit's opinion in Dr. Kiser's second appeal, the Board rescinded O.A.C. § 4715-5-04(B)(2), which required specialists to limit their practice to their specialty (the "Exclusivity Rule"). The process to effect this rescission involved deliberation by the Board's Law and Rules Committee, that committee's recommendation to the Board, a period of public notice and comment, and the approval of the Board as well as an oversight committee. The rescission became effective in December 2016. The Board also voted in a November 2016 meeting to direct its staff to refrain from enforcing the Exclusivity Rule. Meanwhile, the ADA voted in November 2016 to rescind a similar rule from its books.

Because the Board rescinded the Exclusivity Rule and directed its staff not to enforce it, Defendants moved to dismiss Dr. Kiser's case on mootness grounds. That motion is fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

Article III of the United States Constitution limits this Court's jurisdiction to "Cases" and "Controversies." U.S. Const. Art. III, § 2. The mootness doctrine further confines the Court to "live" cases or controversies. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997) (citing *Burke v. Barnes*, 470 U.S. 361, 367 (1987)).

While the repeal of a challenged regulation raises the question of mootness, it is also "well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Ammex, Inc. v. Cox*, 351

F.3d 697, 704 (6th Cir. 2003) (internal quotations omitted). A defendant's voluntary cessation may moot a case "only if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," . . . and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* at 705. The party asserting mootness bears the "heavy burden" of demonstrating it. *Id.* (*citing Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

On the other hand, voluntary "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." *Id.* (citing *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)).[1] Self-correction by government officials "provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosley*, 920 F.2d at 415.

### III. ANALYSIS

Two preliminary matters raised by Plaintiff's opposition to Defendants' motion to dismiss require the Court's attention: (a) Plaintiff's intimation that, even if he obtained the relief he requested in his complaint by the Board's rescission of the Exclusivity Rule, he is entitled to a declaration that Defendants violated his rights over the last seven years; and (b) Plaintiff's argument that the rescission does not fully alleviate his concerns with the Board's regulatory scheme. Once the Court addresses these issues, it will turn to whether rescission of the Exclusivity Rule moots his lawsuit.

---

[1] Plaintiff urges the Court to disregard this pronouncement by the Sixth Circuit in favor of other circuits' analysis granting less deference to an administrative agency than a legislative body. (Doc. 47 at 6-7.) As it must, the Court follows the pronouncements of the Sixth Circuit, which does not distinguish between governmental bodies. *See Mosley*, 920 F.3d at 415.

### A. Plaintiff May Not Obtain Retroactive Injunctive Relief

Plaintiff says that he is entitled to a declaration that his rights have been violated by Defendants, under color of state law, for over seven years. (Doc. 47 at 4.) Even assuming this to be the basis of his complaint (which it is not), Plaintiff is incorrect.

The Eleventh Amendment precludes federal jurisdiction for "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The courts have interpreted this text to include barring suits against states by its own citizens. *Mosley*, 920 F.2d at 416. In *Ex Parte Young*, however, the Supreme Court stated that Eleventh Amendment immunity contains an exception "for injunctive relief against individual state officials in their official capacities." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To qualify for this exception, such an action must seek "prospective injunctive relief to end a continuing violation of federal law." *Id. See also Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Any declaratory relief granted by the Court must be "ancillary" to a prospective injunction. *Banas v. Dempsey*, 742 F.2d 277, 285 (6th Cir.1984). A declaration that Dr. Kiser's rights have been violated in the past is barred by the Eleventh Amendment because it is neither prospective injunctive relief nor ancillary thereto.

### B. Plaintiff Did Not Bring A Claim Under Ohio Administrative Code § 4715-13-03(E)

Plaintiff argues that the Court should deny Defendants' motion to dismiss because, even if the Exclusivity Rule had not been rescinded, he is still unlawfully constrained by Ohio Administrative Code § 4715-13-03(E). This argument is ill-conceived, because Plaintiff's complaint does not raise a claim under § 4715-13-03(E).[2] The Court addresses claims raised in

---

[2] Defendants also argue that § 4715-13-03(E) does not apply to Plaintiff, such that he would lack standing for this type of claim even if he had brought it. (Doc. 48 at 5-6.) Such an argument turns on whether a

Plaintiff's complaint; not claims raised in a response to a motion to dismiss. *Williams v. United States*, No. 1:16-cv-867, 2017 WL 2275564, at *2 (S.D. Ohio May 5, 2017) ("[i]t is axiomatic that a plaintiff cannot add new claims to his complaint in an opposition to a motion to dismiss[.]") (internal quotations omitted).

**C.     Plaintiff's Claims Are Moot By The Board's Rescission Of The Exclusivity Rule**

Defendants argue that the Board's rescission of the Exclusivity Rule and its instructions to its staff not to enforce the rule "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," . . . and "completely and irrevocably eradicated the effects of the alleged violation." *Ammex*, 351 F.3d at 704. Defendants point to the following evidence to argue that there is no reasonable expectation that the Board will re-promulgate the exclusivity rule: (1) the Board rescinded the Exclusivity Rule in a comprehensive process, including a public notice and comment period; (2) the Board formally voted to instruct its staff not to enforce the rule; (3) the absence of disciplinary action against Dr. Kiser over the last four years; (4) the ADA's rescission of the ethical rule that formed the basis of Ohio's rule; and (5) Defendants' representation to the Court that the Board has no intention to reenact the rule. (Doc. 48 at 2.)

Plaintiff argues that the Defendants' reticence to change the rule until after it thought it could lose in the Sixth Circuit militates in favor of justiciability. (Doc. 47 at 8.) He further claims that the board could easily, through a simple majority vote, re-promulgate the offending regulations, (*id.* at 4), or seek redress against him for his past actions despite the change in rule. (*Id.* at 8.) And the fact that the Board's members turn over heightens this risk. (*Id.*) Finally, Plaintiff suggests that he is "investigating evidence that suggests that the rescission of the

---

"specialist" may also be considered a "general dentist" under the regulations. Because Plaintiff does not bring such a claim, the Court need not address this issue.

regulation was done in bad faith in an attempt to avoid liability in this litigation, and there is some evidence of intent to re-promulgate the regulation." (*Id.* at 5.) He does not present any such evidence.

The general rule is "that legislative repeal of a statute renders a case moot," *Kentucky Right to Life*, 108 F.3d at 645, and voluntary cessation is an exception to this general rule. *Id.* The concern of voluntary cessation is that "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, . . . then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *Mann v. Wilkinson*, No. C2-00-706, 2008 WL 4332520, at *6 (S.D. Ohio Sept. 17, 2008) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 *1953)) (internal brackets and quotation marks omitted).

The Sixth Circuit has not made a distinction between administrative and legislative repeals, opting to grant "greater solicitude" to the actions of both legislatures and administrative agencies. *Mosley*, 920 F.2d at 415; *Kentucky Right to Life*, 108 F.3d at 645. Both the Sixth Circuit and its district courts have found changed regulations, absent a stated desire by the regulating body to reinstate the challenged regulation or other reasons to believe the wrong will be repeated, to moot a challenge to the regulation. *See*, *e.g.*, *Mosley*, 920 F.2d at 415 (changed statute and regulation contributed to mootness determination); *Fowler v. McGinnis*, 37 F.3d 1498 (Table) (6th Cir. 1994) (changed prison regulation required mootness determination, because "[w]hen a regulation has been changed to remedy the problem addressed in the complaint, the request for injunctive relief becomes moot"); *Hooper v. Morkle*, 219 F.R.D. 120, 124 (repealed Liquor Board rule prompted mootness determination); *Mann*, 2008 WL 4332520, at *6-*7 (change in regulation prompted mootness determination); *Nat'l Wildlife Fed'n v. United States*

*Army Corps of Engineers*, 404 F.Supp.2d 1015 (M.D. Tenn. 2005) (case mooted by changed regulatory jurisdictional determination).

The Supreme Court and the Sixth Circuit have declined to dismiss cases as moot when "a plaintiff faces an injury subject to recurrence in spite of the government defendant's voluntary cessation." *Nat'l Wildlife Fed'n*, 404 F.Supp.2d at 1019 (collecting cases); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.11 (1982) (case not moot because City indicated that it intended to reenact the same ordinance if the case were dismissed on mootness grounds); *Ammex*, 351 F.3d at 705-06 (case not moot because government agency notified plaintiff that withdrawal of "Notice of Intended Action" may be subject to change by ongoing related litigation).

Defendants have met their burden to show mootness here. The Board rescinded the challenged regulation such that the Court could not grant Plaintiff the relief he sought in his complaint—a declaration as to the unconstitutionality, and injunction against, the (now nonexistent) regulation. The Board may no longer enforce a rule that does not exist, and it also instructed its staff not to enforce the rule. In addition, it has not taken any action against Dr. Kiser. While under other circumstances Defendants' delay until Plaintiff's second appeal may suggest a reluctance to rescind the rule, the ADA's contemporaneous rescission of a parallel rule suggests that Defendants simply were conforming with a national trend. Moreover, Plaintiff's assertion that the rule may be re-promulgated by a simple Board majority vote is incorrect. Instead, the Board must comply with a host of procedures (including public notice and comment) designed to protect the various interests involved. *See, e.g.,* Ohio Revised Code §§ 119.03, 119.04.

In short, there has been no indication that the Board will reinstate the Exclusivity Rule. A suggestion, without more, of bad faith does not change the Court's conclusion. If the Board does reinstate the rule, Plaintiff may reinstate his lawsuit. *See Nat'l Wildlife Fed'n v. United States Army Corps of Engineers*, 404 F.Supp.2d 1015 (M.D. Tenn. 2005) ("It is possible, of course, that the court is mistaken about [Defendant's] intentions . . . . If the Corps chooses to reverse course [post-litigation]. . . , the plaintiff's case would not be moot . . . because such flip-flopping would create a reasonable expectation that the defendant would reinstate the challenged practice at the close of the lawsuit.") (internal quotation marks and brackets omitted).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. (Doc. 36.) This case is **DISMISSED** as moot.

**IT IS SO ORDERED.**

                                  s/ Algenon L. Marbley
                                  **ALGENON L. MARBLEY**
                                  **UNITED STATES DISTRICT JUDGE**

**DATED: September 12, 2017**